Good morning, Your Honors. I'm Attorney Donald C. Schwartz, representing defendants and appellants. May it please the Court. I know you have read the briefing, so I'd like to make a couple of quick points and reserve the balance of my time for any questions that you may have and for rebuttal. Defendant Ed Stolls has been a successful independent broadcaster-owner of FCC licenses since 1976. Worth mentioning is that the underlying judgment here occurred when plaintiffs contended that defendants owed royalties of 1.7 percent on sales of roughly $40 million, they said, that must be similar to another San Francisco radio station, KYT, when defendants' KREV had actually gross sales of roughly $2 million. So we're not really here to review the underlying judgment that led to the damages amount, are we? No, but I wanted to point out that the trial court struck defendants' answer when they had no attorney, and that's basically how we ended up here today. But we're only here to consider the receivership. Correct. The first point of interest is that no oath of office or bond appears in the record. We consider this an issue that renders the receivership void ab initio. Did you make this argument in the district court? It seems like if you had made this argument, maybe someone would have supplemented the record. We did make the argument, and it was made in a motion to dismiss the receivership, and they responded by filing- Point me to where that is in the record. It's the motion from which we appeal here today, so I don't have that. So can you point to where you argued that there wasn't a bond or an oath? Yes, we argued it in our motion to dismiss the receivership from which order we appear here today. I don't have the number in the record in front of me now, but it's certainly well briefed. And they responded by providing a receipt for the bond after we raised the order, but never actually did provide a bond, to my understanding, and also never provided, as we sit here today, an oath of office. We consider this of primary importance and should be as a matter of public policy in front of the Ninth Circuit to establish important guardrails on judgment collection receiverships going forward. My second point is that the ruling from the case below, if it is allowed to stand, will represent a significant departure from all prior law of judgment collection receiverships. The law, as we understand it, holds that a judgment collection receivership must be terminated if and when the judgment debtor has fully satisfied the judgment. And, of course, that makes sense. Here, there is no dispute that on November 9 of 2020, the defendants deposited $1,300,000- What case are you relying on that says the receivership must be terminated at that point? Well, we found no case that- You found no case? That says otherwise. Well, you found no case that supports the argument you're making that it must be terminated. Well, I can't recall a case as I stand here now. I can't either. I would have to refer to our briefing, but it seems to be an important policy question. You don't cite a case in your brief that says that. Excuse me? You don't cite a case in your brief that says that the receivership must be terminated. Well, apparently- At that point. Apparently, this may be a case of first impression if the court wishes to take it up as such. Well, it's not apparently. You know whether it is or not. I have found no case addressing the issue one way or the other in reference to a receivership. It seems to stand to reason that when a judgment is paid, one might argue that that terminates the court's jurisdiction. When is the start and when is the finish of litigation? But there is no dispute that on November 9 of 2020, the defendants posited $1,301,523.16 into the court registry in full satisfaction of the then-operative First Amendment judgment. Leading up to that point, the judgment collection receivership was ordered on July 7, 2020, during the COVID lockdown. The judgment collection receiver immediately changed decades of carefully developed marketing, thereby simply destroying the business operations and devaluing the licenses, which continues to this day. Did the amount deposited include fees for the receiver? They supported the- I believe were fees for the receiver. I'm not sure about that. But the judgment was the judgment and it was paid. I had understood it to be the judgment owed to plaintiffs and not any fee for the receiver. Okay. Her Honor may be correct. I would just have to refer to the- So if that's true, then how could you close the receivership until the receiver was paid? Well, because it becomes like a mythological Greek lizard that eats itself, starting with its tail, because it continues on and on and never ends. Because every time you do anything, there's more fees and more costs. And you keep paying judgments is what happened here. And it never ends. He paid three judgments, as I recall in this record, in the record here. And it kept becoming larger and larger to a point where, at the request of the receiver, the judge invited all of appellant's creditors, who were not parties of this case, to make submit claims from all over the western United States, from which to be paid from the sale of these radio licenses. At which point we said, well, if we're going to have an ad hoc bankruptcy court here, we might as well file for bankruptcy and end this. So he did. He filed for bankruptcy in the United States District Court, sitting in Las Vegas. Judge Landis has ordered the receiver to turn over all the assets to appellant Mr. Stolls and his companies. And the receiver is fighting that. In fact, as we stand here today, there is a contempt motion pending against the receiver in that court. And what does that have to do with the issue before us? Well, it has to do because this court could easily terminate this whole case right now. And it will all be resolved in the bankruptcy court and should be. That's what bankruptcy courts are for. This court can easily, succinctly, clearly, in no uncertain terms, end this case right now and send us all to the bankruptcy court for final resolution where these matters probably should be played out. Because if we are going to start inviting creditors who are non-parties of this case to start submitting claims so that assets could be sold, create a pot of gold for all the attorneys and everyone else to dip their ladles, we might as well try to do that in the bankruptcy court. And I'm not suggesting that that's what we want done in the bankruptcy court, but that's what people try to do in the bankruptcy court, certainly not in the U.S. District Court. Did you want to save time for rebuttal? I do. Thank you. Could I also just mention maybe while you're sitting down, I think the order you appealed from starts at ER 27, and I don't see anything about the bond or the oath, so maybe you could just look at that in the meantime too. Okay. Thank you. Good morning, Your Honors, and may it please the court. Sharon Mayo on behalf of the plaintiffs and appellees. I'd like to first respond to a couple of points that Mr. Schwartz made to correct a couple of factual issues. First, as you noted, Judge Friedland, the facts of the underlying dispute are not at issue here. That judgment was affirmed by this court. Second of all, as you noted, the appellants did not make the argument that the receivership was void ab initio. Their papers don't say anything about posting the bond or taking the oath. And, in fact, in our brief, we pointed to the record where the receiver did, in fact, take the oath and where there was record evidence of posting the bond. And regarding whether or not this is a significant departure from prior law, whether or not the receivership must be terminated upon satisfaction of the judgment, Judge Tashima, as you pointed out, there is no case that says that the receivership must be terminated. In fact, the law governing receiverships is in equity jurisprudence to which, you know, wide discretion is given to the district court. How do you respond to your opponent's argument, though, that there will always be more fees and so you can never end things because it'll just keep continuing and then you get more fees and it goes on forever? Well, I think that's within the discretion of the district court to establish an orderly proceeding, which the district court tried to do here. He ordered the receiver to submit an accounting, which the receiver did. He determined which of those claims should be paid. He rejected some of the claims. In fact, there were the claims from the appellant's prior attorneys of over a million dollars that the district court said, you cannot collect here. You have to go and get a judgment. And so the district court very carefully decided which amounts were appropriate to be paid out of the receivership and, in fact, then directed appellants to pay those amounts, which they never have done. So the receivership is still continuing now? It is, although there's nothing happening in the district court, I think, because two of the entities are in bankruptcy, although there's no formal say in the district court. I had four other points that I wanted to make very quickly. First, the receivership was always proper. The receivership was successful. The judgments cannot be unwound at this point, and there was no abuse of discretion. First, the receivership was the entirely predictable and proper result of years of obstructionist litigation conduct by appellants to avoid paying the songwriters, lyricists, and music publishers who created musical content performed over their radio stations. In fact, the court exercised great restraint in allowing appellants ample time to pay the judgment. Second, the receivership was successful in that it has finally resulted in payment of the plaintiff's judgments, despite the fact that appellants' evasive conduct continued and even escalated once the receiver was appointed. Also, can I jump in and just ask you one factual question? Do your clients still have any stake in the receivership continuing at this point? Because I guess I was under the impression that your clients had been paid in full now, and it was really the receiver who was still trying to collect whatever fees might be owed to it. There is the potential, Your Honor, of an additional motion for attorneys' fees. The underlying case was brought under the copyright statute, which does provide for attorneys' fees, and the court, in fact, had previously awarded post-judgment fees and costs. So the longer this is prolonged, and there is very likely to be a request in this court, should we prevail, that we would request our fees here. So there are some amounts that may come due. I think there's no question that the other judgments are not appealable at this point. The amended judgment was affirmed by this court. The appeal from the second amended judgment was abandoned, and they never appealed from the third judgment. So what's left of their arguments on appeal? They claim that the district court abused its discretion by keeping the receivership open after plaintiff's judgments were satisfied. First of all, we greatly dispute when satisfaction took place. Counsel for the appellant said that it's undisputed that the judgment was satisfied in November of 2020. That is not the case. Funds were deposited with the district court, but at that time, the plaintiffs and appellants never, they hadn't yet received the funds. Do we understand why? Why did they not get sent to the plaintiffs at that point? Because appellants refused to stipulate to their release from the court. I think also... Why was that needed? I'm just not clear on what the procedure was here. Like, once the money was there, wasn't it clear it was for the plaintiffs? I don't understand. It was clear that it was for the plaintiffs, but it was not clear whether or not that would affect a satisfaction of judgment and cut off the then-pending motion for attorney's fees that had been incurred in the post-judgment collection efforts. But that sounds like something plaintiffs might not have stipulated to. Were you saying that the defendants didn't stipulate to it? Correct. They did not stipulate. I asked them to stipulate to the release of the funds, and they wouldn't. I think also, by that point, the district court wanted to see how much was going to be deposited. And at that point, there were the fees of the receiver, the receiver's counsel, potential other... the other Bellaire judgment to consider. And so I think the district court didn't, on its own, sua sponte release the funds. The case was still very active in litigation. I'm worried that maybe I should cut you off unless my colleagues have more questions because you were supposed to divide by five minutes. Yes. Yes. I'd just say one final point is that the appellants have at all times had the keys to their release from the receivership, pay their obligations, and then the receivership would be done. Thank you, Your Honor. Good morning. Fred Heather on behalf of the receiver. To answer Your Honor's question or questions, no funds were ever paid for the receiver or his expenses for counsel. At the very end of the district court proceeding, Judge Bernal issued an order in response to a request from the appellants as to how do we end the receivership. And his answer was very clear. You need to stop litigating so the receiver can prepare a final accounting. The receiver can't do that while you continue to file motions that have to be responded to. There won't be a continuation of fees once the receiver is allowed to submit a final accounting and things end. This is a case that has, as you know from the record, gone on for years through a series of contempts and obstruction and delays which led to the appointment of the receiver. We are now back in the bankruptcy court at square one where just as this case started, the proponent is to try to sell a station and it may take a year to get a bid. The bankruptcy court has said if there's delay, it will allow the receiver to resubmit an application to dismiss the bankruptcy and reinstate the receivership. And the receiver has proposed a plan. And tomorrow there's a hearing in the bankruptcy court as to whether the exclusive period for the debtors to proceed with the plan will be extended. Their first plan was rejected. So there is a contingent possibility that the case will revert back to Judge Bernal. As soon as litigation stops by the appellants, the receivership can end. The amounts for plaintiffs have, setting aside attorney's fees I guess, the amounts for plaintiffs have been deposited so the bankruptcy can't affect that, right? Those fees are at the district court somewhere or in escrow somewhere? Well, I think the amounts that were deposited in the district court have been distributed to the plaintiffs. Okay. So they're no longer in the court. But no fees were ever paid to the receiver for his fees or for counsel. So the stake in the bankruptcy related to this is the fees for the receiver and attorney's fees? Correct. Although I should note that in the reply brief, they suggest that this court should allow them in the bankruptcy proceeding to pay the receiver because they recognize it's their obligation. But in their plan, they submit it to the bankruptcy court. The amount they provided for the receiver and the counsel was zero. So we're again back into a situation where there's going to be extended delay. And if this court can say anything about this case that indicates that this kind of continued delay and obstruction and misuse of the courts to delay the ultimate resolution of a case and delay the ultimate just results, it would be greatly appreciated because I think we may be back here in a couple of years on an appeal from the bankruptcy. Mr. Heather, let me ask this question. Two of the three stations are in bankruptcy now. Is that right? I believe so. I believe Mr. Schultz has other stations that are not in bankruptcy. But, yes, of the ones that are involved in this case, I believe there are two in bankruptcy. So as to those two stations, I assume there's a 362 stay, right? Yes, Your Honor. This court issued that. So we can't or we shouldn't do anything on this appeal that affects the rights of those two stations. Is that correct or not? I think on this particular appeal, Your Honor, has stayed consideration of that until the bankruptcy proceeding goes. But I think equally this court should not do anything that interferes in the life of the receivership for two reasons. First, it is a proponent of a plan if the bankruptcy court allows that to go forward. The receivership has a binding agreement to sell the stations. And should the court allow that plan to go forward, then the matters can be resolved in bankruptcy. But should the delay continue in bankruptcy, we will seek to terminate the bankruptcy and reinstate the receivership in the district court to wind up the affairs, to sell the stations, pay the creditors, and have the receiver be paid. We want this to be over. We don't want more fees. All right. Thank you. Thank you. Thank you. Where the district court went astray for sure, almost irrefutably, is that the court invited non-party creditors to place claims into this district court case to be paid from the sale of the radio stations, which had gone far astray from satisfying the judgment in the case. And what distinguishes this case and does make it a case of first impression on many issues is that this defendant, the appellants, have demonstrated an ability to pay the judgment and, in fact, did pay the judgment, and there doesn't seem to be in the equities a reason to keep it open to pay the receiver, particularly now that there's a bankruptcy pending. And, yes, it is a case of first impression, and we respectfully submit that on all the cases cited in the briefs, that they all support on the law and the facts appellants' position in the matter. In fact, I specifically begged the court and counsel for a number. We want a number. Give us a number, and we'll write a check. Just give us the number. And yet we found out that not only was there apparently no oath of office or predicate bond as required by state law and ordered by this court, by the trial court to be issued to give rise to the receivership, the appellants tried to pay the judgment repeatedly, and the receiver kept implementing roadblocks. First they refused to accept the money. Then they wanted a letter. So a letter came out on August 24th. Excuse me. Sorry, you're over your time. So unless my colleagues have more questions, I think we need to cut you off. We then did learn about. Sorry, sir, you're over your time. So thank you very much. Thank you both sides for the helpful arguments. This case is submitted.
judges: TASHIMA, WATFORD, FRIEDLAND